**UNITED STATES of America, Plaintiff,**

v.

**Otis MOORE, Defendant.**

**No. 03–CR–11.**

United States District Court, E.D. Wisconsin.

Oct. 17, 2003.

Joy M. Bertrand, for Plaintiff.

Michael W. Steinhafel, for Defendant.

## *MEMORANDUM*

ADELMAN, District Judge.

Defendant Otis Moore pled guilty to distributing crack cocaine and possessing a firearm as a felon, and the probation office prepared a pre-sentence report (PSR) in anticipation of sentencing. The PSR assessed defendant one criminal history point for a 1998 conviction of "loitering,

illegal drug activity" in the City of Milwaukee's Municipal Court, for which he was fined $640. I write to explain why this assessment was improper under the United States Sentencing Guidelines.

## I. ASSESSMENT OF CRIMINAL HISTORY POINTS UNDER THE SENTENCING GUIDELINES

Under the Guidelines, a defendant is assessed criminal history points based on the length of his prior sentences: three points for sentences of imprisonment exceeding thirteen months; two points for sentences of at least sixty days; and one point for any other sentence, up to a total of four points. Additional points are assessed if the defendant committed the offense while under a criminal sentence or within two years of his release from a prior term of imprisonment of at least 60 days. U.S.S.G. § 4A1.1.[1]

Sentences for all felony offenses are counted under these rules. U.S.S.G. § 4A1.2(c). Sentences for misdemeanors and petty offenses are counted unless the prior offense is excluded by § 4A1.2(c)(1) or § 4A1.2(c)(2). Section 4A1.2(c)(1) lists fifteen offenses[2] that are counted *only* if the sentence imposed was a term of probation of at least one year or a term of imprisonment of at least thirty days, or if the offense was "similar" to the instant offense. Section 4A1.2(c)(2) lists six offenses (hereinafter, the "listed offenses")— hitchhiking, juvenile status offenses and truancy, loitering, minor traffic violations (e.g.speeding), public intoxication and vagrancy—that are *never* counted, "by whatever name they are known."

## II. INCLUSION OF LOITERING CONVICTION IN DEFENDANT'S CRIMINAL HISTORY

### A. Section 4A1.2(c)(2)

█ Under the plain language of § 4A1.2(c)(2), loitering is never counted. Nevertheless, the probation office counted defendant's loitering conviction because it involved "illegal drug activity." However, the § 4A1.2(c)(2) prohibition is not dependent on the defendant's motive for loitering.

First, the language of § 4A1.2(c)(2) is very broad. "Sentences for the following offenses and offenses similar to them, by whatever name they are known, are never counted[.]" U.S.S.G. § 4A1.2(c)(2). By using such broad language, the Sentencing Commission left no doubt that loitering and the other listed offenses were not to be counted regardless of the label the state or municipality placed on them.

Second, neither the Guidelines nor the commentary suggest that an excluded offense may be counted depending on the purpose for which it was committed. That the City of Milwaukee has enacted ordinances to punish loitering committed for various purposes—e.g., drugs, prostitution, etc.—does not in any way change the effect of the guideline. The probation office provides no authority for the proposition that, notwithstanding the plain language of

---

1. Based on the number of points assessed, the defendant is assigned a criminal history category (CHC). The guideline sentence is based on a Grid in which the defendant's CHC is the horizontal axis and his "offense level" based on the instant offense is the vertical axis.

2. These offenses are: careless or reckless driving, contempt of court, disorderly conduct or disturbing the peace, driving without a license or with a revoked or suspended license, providing false information to a police officer, fish and game violations, gambling, hindering or failing to obey a police officer, passing a bad check, leaving the scene of an accident, local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law), non-support, prostitution, resisting arrest and trespassing.

§ 4A1.2(c)(2), loitering may be counted if it was for the purpose of "illegal drug activity."

Thus, under the plain language of the guideline, the probation office erred in counting the loitering offense.

## B. Relevant Caselaw

My research has revealed just two cases touching on this issue, both unpublished. In *United States v. Paul,* No. 97–1270, 152 F.3d 921, 1998 WL 398808, *1, 1998 U.S.App. LEXIS 16293, at *2–3 (2d Cir. June 8, 1998), the district court counted two convictions of "Loitering in the First Degree" under New York state law. The court of appeals vacated the sentence, stating:

> Notwithstanding the plain language of the Guidelines, the district court added two points to [the defendant's] CHC, one for each loitering conviction[ ], relying on *United States v. Martinez,* 956 F.2d 891 (9th Cir.1992) (finding that conviction of "being under the influence of a controlled substance" not similar enough to "public intoxication" to be exempted from the CHC under § 4A1.2(c)(2)). The instant case is readily distinguishable from *Martinez.* "Loitering" is specifically listed in § 4A1.2(c)(2). Hence, there is no need for analogy between an offense conduct listed in § 4A1.2(c)(2) and another offense conduct not listed in that section, as in *Martinez.* Further, there is no explanatory note to § 4A1.2(c)(2) in the Sentencing Guidelines that indicates that certain types of loitering are not to be exempted from the Criminal History Category. Therefore, the district court erred in counting [the defendant's] loitering convictions towards his CHC.

*Id.,* 1998 WL 398808, *1, 1998 U.S.App. LEXIS 16293, *3.

In *United States v. Harrity,* 64 Fed. Appx. 335, 336 (3d Cir.2003), the court affirmed the inclusion in the defendant's criminal history of a 1995 "loitering to obtain a controlled substance" conviction under New Jersey law. The court noted that the guidelines did not provide definitions of the offenses listed in § 4A1.2(c)(2) or explain how to determine whether an offense is "similar" to them. The court stated that under circuit precedent an offense was considered "similar" to a listed offense "if it contains the same elements." *Id.* at 337 (citing *United States v. Elmore,* 108 F.3d 23, 27 (3d Cir.1997)). The court then proceeded to "determine whether the elements of the New Jersey offense for which Harrity was convicted in 1995 differ from the elements of a generic loitering offense." *Id.*

The manner in which the court framed the issue led ineluctably to a conclusion that the offense should be counted. The New Jersey law under which Harrity was convicted contained an element—the purpose of obtaining or distributing drugs—missing from the generic (i.e. Black's Law Dictionary or Model Penal Code) definition of loitering. *Id.* Thus, the court concluded that the offense was not "similar" to the listed offense in § 4A1.2(c)(2) and could be counted.

The *Harrity* court's analysis is unpersuasive. In fact, the court committed the same error as the district judge in *Paul.* As a matter of statutory interpretation, it was both unnecessary and improper for the court to ask whether the offense in question was "similar" to the listed offense. Section 4A1.2(c)(2) plainly and unambiguously prohibits the counting of *all* loitering convictions—"by whatever name they are known." "[T]here is no explanatory note to § 4A1.2(c)(2) in the Sentencing Guidelines that indicates that certain types of loitering are not to be exempted from the Criminal History Category." *Paul,* 1998 WL 398808, *1, 1998 U.S.App. LEXIS 16293, at *3. The plain language of

the guideline controlled, and further inquiry was inappropriate. The same is true in the present case.

However, even if the issue is one of "similarity," I would, nevertheless, reject *Harrity's* conclusion that loitering for the purpose of drug activity may be included in a defendant's criminal history.

### 1. Test for Determining Whether an Offense is "Similar"

The circuits are split on the proper test for determining whether a prior offense is "similar" under § 4A1.2(c). The First, Third and Fourth Circuits have adopted the "elements" test used in *Harrity*. *See, e.g., United States v. Perez de Dios*, 237 F.3d 1192, 1198 (10th Cir.2001) (citing *United States v. Harris*, 128 F.3d 850, 854–55 (4th Cir.1997); *Elmore*, 108 F.3d at 27 (3d Cir.1997); *United States v. Unger*, 915 F.2d 759, 763 (1st Cir.1990)). Under this approach, a prior offense is "similar" to a listed offense if it's elements "in actuality constitute" the listed offense as the listed offense is generally understood, even if the prior offense has a different label under state law. *Elmore*, 108 F.3d at 27.[3]

■ The Second, Fifth and Seventh Circuits disagree and instead use a "multi-factor" test. *Perez de Dios*, 237 F.3d at 1198 (citing *United States v. Martinez–Santos*, 184 F.3d 196, 205–06 (2d Cir.1999); *United States v. Booker*, 71 F.3d 685, 689–90 (7th Cir.1995); *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir.1991)). Under this test, the court applies:

> a common sense approach which relies on all possible factors of similarity, including a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

*Hardeman*, 933 F.2d at 281; *accord United States v. Harris*, 325 F.3d 865, 872 (7th Cir.2003); *Booker*, 71 F.3d at 689; *see also United States v. Roy*, 126 F.3d 953, 954 (7th Cir.1997) (stating that the Seventh Circuit has not "adopted a formal analysis" but simply employs a "common sense comparison"); *United States v. Binford*, 108 F.3d 723, 726 (7th Cir.1997) (same); *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir.1992) (stating that court's goal is to determine whether the prior offense is "categorically more serious" than the listed offense).[4]

Thus, the Seventh Circuit has rejected *Harrity's* rigid "elements" test. That test produces particularly absurd results in the present context. Under *Harrity/Elmore*, no offense would ever be considered "similar" if it's elements varied from those of

---

**3.** The Fourth Circuit has defined the test somewhat differently. *See Harris*, 128 F.3d at 854 (stating that two offenses are "similar" when "their essential elements are nearly corresponding or resembling in many respects") (internal quote marks omitted).

**4.** The Eighth, Tenth and Eleventh Circuits apply an "essential-characteristics-of-the-crime" test. *Perez de Dios*, 237 F.3d at 1198–99. Under this approach, "similar" is given its normal, dictionary meaning—"[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." *Id.* at 1198 (citing *United States v. Mitchell*, 941 F.2d 690, 691 (8th Cir.1991); *United States v. Wilson*, 927 F.2d 1188, 1189–90 (11th Cir.1991)). This approach also eschews the rigid elements analysis and seems generally consistent with the Seventh Circuit's approach. *See United States v. Mendez–Lopez*, 338 F.3d 1153, 1162 (10th Cir.2003) (Bebel, J., dissenting) (discussing test adopted in *Perez de Dios*, and noting that the "elements approach" is a "slightly narrower inquiry"). The Ninth Circuit has used both the elements and the multi-factor approaches. *United States v. Lopez–Pastrana*, 244 F.3d 1025, 1027 (9th Cir.2001).

the listed offense. But an offense with the same elements is not "similar," it is "identical" to the listed offense. The Commission could not have intended that the guideline be read in this way. If it had, it would have "limited exclusion to the 'listed offenses, by whatever name they are known,' or to 'offenses having the same (or similar) elements.'" *Martinez–Santos,* 184 F.3d at 203.

Further, in *Elmore* and *Harrity* the Third Circuit essentially read the words "offenses similar to them" out of the guideline; under this approach, the guideline does nothing more than account for the states' disparate statutory labeling practices.[5] As the court noted in *Martinez–Santos,*

> [A]t a minimum, we should read the language "offenses similar to them" to include some offenses beyond the Listed Offenses. To do otherwise would violate a basic rule of statutory interpretation: avoid reading statutory language in a way that would "in any way make some of its provisions surplusage." *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985). Therefore, we reject the government's suggestion that we read § 4A1.2(c) as an attempt merely to circumvent variations in state petty crime nomenclature.

*Id.* at 204.

The *Elmore* and *Harrity* courts also failed to explain how their construction of the term "similar" squares with the Commission's use of the phrase "by whatever name they are known," which appears to modify both "the following prior offenses" and "offenses similar to them." "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to

the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:33 at 373 (6th ed.2000). If the guideline was designed only to exclude offenses synonymous with those listed, the Commission would not have applied this qualifier to both phrases.

█ For all of these reasons, *Harrity's* conclusion that loitering for the purpose of illegal drug activity may be included because it is not "similar" to the listed offense is unsound.

### 2. Application of Seventh Circuit Similarity Test

As noted, the plain language of § 4A1.2(c)(2) excludes all loitering offenses, and there is no need to consider whether the prior offense of "loitering, illegal drug activity" is similar to the listed offense of "loitering." *See Paul,* 152 F.3d 921, 1998 WL 398808, *1, 1998 U.S.App. LEXIS, at *3. However, even if a similarity inquiry was appropriate, defendant's conviction for "loitering, illegal drug activity" would have to be excluded.

Under Seventh Circuit precedent, the court applies "a common sense approach, which relies on all possible factors of similarity." *Booker,* 71 F.3d at 689. The court looks at "the actual offense conduct and the actual penalty deemed appropriate by the sentencing court." *Id.* The ultimate goal of the inquiry is to determine whether the prior offense is "categorically more serious" than the listed offense. *Caputo,* 978 F.2d at 977.

Defendant's prior offense of "loitering, illegal drug activity" cannot be considered "categorically more serious" than the list-

---

5. The Third Circuit seems to apply an even more rigid elements test than the Fourth Circuit. The Fourth Circuit does not require that the elements be the same, only that they be "nearly corresponding or resembling in

many respects." *Harris,* 128 F.3d at 854. Under *Harris,* it would at least be possible for an offense with a superfluous element to be excluded.

ed offense. It was a mere ordinance violation, punishable by monetary forfeiture rather than jail.[6] The municipal court imposed a forfeiture of just $640, close to the bottom of the applicable sentencing range. *See* Milwaukee, Wis. Ordinances § 106–35.6(2) (stating that applicable penalty is forfeiture of $500 to $5000). Further, if defendant's actual conduct had been "categorically more serious" than that usually involved in the listed offense of loitering, the Milwaukee police likely would have referred the matter for prosecution under state drug laws.[7] Finally, as a matter of common sense, the offenses are similar: the elements are identical save for the defendant's motive or purpose to loiter.

Therefore, for all of these reasons, § 4A1.2(c)(2) prohibits the inclusion of defendant's "loitering, illegal drug activity" offense.

## C. Applicability of § 4A1.2(c)(1)

The government has previously argued that this type of prior offense may be counted under § 4A1.2(c)(1), which, as noted, allows the counting of local ordinance violations that are also criminal offenses

under state law.[8] *See* U.S.S.G. § 4A1.2 cmt. n. 12.[9] However, this argument also fails.

■ First, the specific language of § 4A1.2(c)(2) must prevail over the general language of § 4A1.2(c)(1). One of the cardinal rules of statutory construction is that "statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones." *United States v. Lara*, 181 F.3d 183, 198 (1st Cir.1999) (citing *HCSC–Laundry v. United States*, 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981); *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); 2B Norman J. Singer, *Statutes and Statutory Construction* §§ 51.02–03 (1992)); *accord Davis v. Barber*, 853 F.2d 1418, 1425 (7th Cir.1988).

Section 4A1.2(c)(2) specifically excludes all loitering offenses, whether state or local. Section 4A1.2(c)(1) does not state that loitering (or any other listed offense under § 4A1.2(c)(2)), *will* be counted if it was prosecuted locally. Thus, § 4A1.2(c)(2)

---

**6.** Other jurisdictions prosecute loitering at the state level. *See, e.g.,* N.Y. Penal Law § 240.35; N.J. Stat. § 2C:33–2.1. Wisconsin has no statutory counterpart to Milwaukee's "loitering, illegal drug activity" ordinance.

**7.** For example, if drugs or an inordinate amount of cash had been found on his person, he would likely have been prosecuted for possession of a controlled substance, possession with intent to deliver or distribution of a controlled substance.

**8.** To its credit, the government did not support counting this loitering offense in the present case. However, because this issue has arisen before and may come up again, I will address the argument based on § 4A1.2(c)(1).

**9.** Application note 12 states: "A number of local jurisdictions have enacted ordinances covering certain offenses (e.g., larceny and assault misdemeanors) that are also violations

of state criminal law. This enables a local court (e.g., a municipal court) to exercise jurisdiction over such offenses. Such offenses are excluded from the definition of local ordinance violations in § 4A1.2(c)(1) and, therefore, sentences for such offenses are to be treated as if the defendant had been convicted under state law." The Commission's decision to count such offenses is questionable. In Wisconsin (and probably the other states), defendants charged with municipal offenses are not entitled to the appointment of counsel and do not receive the same due process protections afforded criminal defendants; the municipality need only prove the offense by "clear and convincing" evidence rather than beyond a reasonable doubt; and many municipal convictions come by way of default. To increase a defendant's federal sentence based on a defaulted ticket raises serious questions of fairness.

more specifically addresses the issue and must prevail. Moreover, it would be irrational to find that a *local* loitering conviction counts under § 4A1.2(c)(1) (so long as there is a state statutory equivalent) but that a *state* loitering conviction does not.

Second, even assuming, *arguendo,* that § 4A1.2(c)(1) trumps § 4A1.2(c)(2) when the otherwise excluded offense is a local ordinance violation with a state statutory counterpart, the ordinance at issue in the present case does not mirror a state criminal law. Milwaukee, Wis. Ordinances § 106–35.6(2) provides: "Any person who loiters or drives in any public place in a manner and under circumstances manifesting the purpose of inducing, soliciting or procuring another to engage in illegal drug activity shall forfeit not less than $500 nor more than $5000 . . . ." Sub-section (1)(a) of the ordinance defines "illegal drug activity" as "unlawful conduct contrary to any provision of ch. 961, Wis. Stat., or any substantially similar statute, statute of a foreign state, or ordinance of any political subdivision." Thus, the ordinance punishes loitering in a manner manifesting the purpose of engaging in illegal drug activity under various laws; it does not punish the drug activity itself; and it is possible to violate the ordinance without also violating state drug laws. This is not the type of ordinance contemplated by application note 12.[10] Thus, the offense may not be counted under § 4A1.2(c)(1).

## III. CONCLUSION

The sentencing guidelines have many flaws, but failing to impose sufficient punishment is not one of them. Courts should not stretch the language of the guidelines to increase a defendant's criminal history points or his offense level. Despite its general conclusion that most prior offenses should be counted, the Sentencing Commission has determined that certain petty offenses bear so little relation to the purposes of sentencing that their inclusion "would more likely distort than improve the process established by the guidelines for determining an appropriate sentence." *Booker,* 71 F.3d at 691 (internal quote marks omitted). Loitering is one of those offenses. The Commission's plainly expressed intent should not be disregarded because a local anti-loitering ordinance includes the provocative phrase "for drug activity." Thus, I excluded defendant's conviction of "loitering, illegal drug activity" from his criminal history score.

---

**10.** Wisconsin has not enacted a criminal statute equivalent to the City of Milwaukee's "loitering for the purpose of illegal drug activity" ordinance. Wisconsin appears to have enacted only two statutes concerning loitering. Wis. Stat. § 346.29 prohibits loitering on a roadway in a manner that interferes with traffic, but this is not a criminal law. *See* Wis. Stat. § 346.30(1)(a) (providing a forfeiture of $2 to $20 for a violation of § 346.29). Wis. Stat. § 947.02 prohibits "vagrancy," and provides as follows:

> Any of the following are vagrants and are guilty of a Class C misdemeanor:
> (1) A person, with the physical ability to work, who is without lawful means of support and does not seek employment; or

> (3) A prostitute who loiters on the streets or in a place where intoxicating liquors are sold, or a person who, in public, solicits another to commit a crime against sexual morality; or
> (4) A person known to be a professional gambler or known as a frequenter of gambling places or who derives part of his or her support from begging or as a fortune teller or similar impostor.

Section 947.02 is a criminal law, but violations of it would, nevertheless, likely fall within the exclusion of vagrancy offenses in U.S.S.G. § 4A1.2(c)(2).