# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2026

Lyle W. Cayce
Clerk

No. 24-51000

United States of America,

*Plaintiff—Appellee*,

*versus*

Bailey Warren Lowe,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:23-CR-154-1

Before Smith, Stewart, and Ramirez, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*.

Bailey Lowe, convicted of coercing and enticing a minor to engage in sexual activity, appeals a two-level enhancement for distribution of material involving sexual exploitation of a minor. Contrary to his assertion that he engaged in "mere" solicitation, Lowe became an active participant in the distribution—he threatened to expose the female child victim H.H., specified which intimate pictures he desired, demanded when he wanted the images sent, articulated the manner and means of sending them, and coerced the child victim into sending additional images when she failed to send precisely what he contemplated. Because Lowe had a sufficient degree of

1

No. 24-51000

control over the child whom he coerced, the district court did not err in imposing the distribution enhancement. We affirm.

I.

Lowe repeatedly contacted H.H., who was then 13 years old, and solicited nude photographs from her using the social media application Snapchat. In fact, H.H. told "Warren" that she was 13 years old. "Warren" initially told H.H. that he was 17 years old but later disclosed his true age, which H.H. recalled was approximately 22 to 23.

"Warren" demanded that H.H. send him pictures of her nude breasts and vagina. He also "demanded" that H.H. send a video of herself inserting objects into her vagina. On at least one occasion, "Warren" demanded H.H. "send nudes now" and placed an emphasis on "now." When H.H. was slow to respond, "Warren" threatened to "block" or "expose" her. And when H.H. sent pictures of her nude breasts to "Warren," he demanded to see her "other part," which H.H. took to mean her vagina. If H.H. refused to comply with his requests because she was "on her period," "Warren" would become angry and threaten to tell H.H.'s mother unless she complied with his requests "as soon as she was off her period." While deployed, "Warren" "instructed H.H. to record herself having sex with other people and send him the videos." She did not comply with that demand, and he became angry, threatening to expose her.

In 2022, "Warren" drove to H.H's great aunt's house in Troup, Texas, to meet H.H. in person and advised her to "sneak out" so they could "have fun" and "have sex." After "Warren" arrived at the house, H.H. suggested parking in a nearby field, where "Warren" removed H.H.'s pajama pants and underwear and threw them onto the floorboard in the backseat. He "laid down" on top of H.H. and inserted his penis into her vagina. "While he was on top of her," "Warren" asked H.H. how old she

was, and she repeated that she was 13 years old. "Warren" "freaked out" and responded, "Oh shoot, well you better not tell no one because I'm 22 … you can get me in a lot of trouble … I'm in the Marines." Undeterred, "Warren" continued to penetrate her and did not use a condom.

The FBI identified "Warren" as the instant defendant. When investigators reviewed electronic devices seized from Lowe's home, they found multiple chat conversations between Lowe and H.H. as well as pornographic images and videos of H.H. They also identified multiple chat conversations between Lowe and ten other female victims ranging between 12 and 16 years old.

Lowe was charged with a single count of coercion and enticement of a minor to engage in sexual activity. 18 U.S.C. § 2422(b). He pleaded guilty without a plea agreement. The PSR calculated an offense level of 42 and recommended a two-level upward enhancement for knowingly engaging in distribution of material involving sexual exploitation of a minor. U.S.S.G. § 2G2.1(b)(3).

Lowe objected to the enhancement, contending that "distribution" does not include "mere solicitation" and that there was no evidence he had transferred H.H.'s images and videos to others or made them public. The probation officer, citing U.S.S.G. § 2G2.1 (comment n.3), said that the enhancement applied because Lowe had "aided, abetted, and induced the victim to produce child pornography" and send it to him via Snapchat.

Although Lowe reurged his objection at sentencing, the district court overruled it. Adopting the PSR, the district court indicated that the guideline range was 360 months to life. It sentenced Lowe to imprisonment for life, a lifetime of supervised release, and $5,200 in fines and special assessments.

While imposing the sentence, the district court found Lowe's conduct

"reprehensible," stating that "it's hard to imagine how the people who created the guidelines could adequately capture what the appropriate sentence is for what Mr. Lowe did." Noting that Lowe was in the military at the time, the court further explained "by that I mean [the guidelines] are far too low in my opinion for his conduct" and referred to Lowe as a "monster," whose "conduct [wa]s beyond words" and "horrific."

## II.

A PSR "bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012). "[A] defendant must offer rebuttal evidence demonstrating that [facts contained in the PSR] are materially untrue, inaccurate or unreliable" where those facts "are supported by an adequate evidentiary basis with sufficient indicia of reliability." *Id.* (internal quotation marks omitted). Mere objections are generally insufficient. *Id.*

## III.

The issue is whether the district court erred by imposing an enhancement for distribution of material involving sexual exploitation of a minor. U.S.S.G. § 2G2.1(b)(3). It did not.

"[T]his court has not previously considered whether a defendant's coercing a minor to take and send images of child pornography qualifies as 'distribution' under § 2G2.1(b)(3) and its relevant commentary." *United States v. McGavitt*, 28 F.4th 571, 577 (5th Cir. 2022). That is the crux of this appeal.

Section 2G2.1(b)(3) states, "If the defendant knowingly engaged in distribution, increase by 2 levels." To be clear, there is arguably some tension within the application notes of the guidelines. *See McGavitt*, 28 F.4th at

No. 24-51000

577 (noting that there is "arguably some conflict between Application Note 1's exclusion of 'mere solicitation' . . . and Application Note 3's various inclusions"). We address them in turn.

> Application Note 1 defines "distribution" as follows:
>
> "Distribution" means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.1 cmt. n.1. Application Note 3 provides that a defendant knowingly engages in distribution if he "(A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." U.S.S.G. § 2G2.1 cmt. n.3.

Lowe relies on Application Note 1 to contend that the enhancement should not apply because he merely solicited images and videos from H.H. without sharing, uploading, or downloading the materials to any file-sharing program. He also relies on cases in which courts have generally understood distribution as the sharing of images or videos with others.[1]

The government, on the other hand, maintains that the enhancement applies because distribution is "broadly" defined as "any act" in Application Note 1, and Lowe induced and "demanded" that the victim produce child pornography; when H.H. was "slow to comply, Lowe would threaten to

---

[1] *See United States v. King*, 979 F.3d 1075, 1083 & n.3 (5th Cir. 2020) (declining to address the enhancement's application but noting that there was no evidence that the defendant shared the images with others despite transferring images from his cell phone to computer disk).

block or 'expose' her." *See* U.S.S.G. § 2G2.1 cmt. n.3(B). The government also submits that "Lowe and H.H. agreed for her to produce and send him the child pornography," constituting a conspiracy to distribute." *See* U.S.S.G. § 2G2.1 cmt. n.3(C).

It strains credulity to suggest that Lowe, who demanded and coercively obtained child sexual abuse materials, had "merely" solicited them from a child victim. In fact, Lowe became an "active participant" in the distribution—he threatened to expose the female child victim, specified which intimate pictures he desired, demanded when he wanted the images sent, articulated the manner and means of sending them, and coerced the victim into sending additional images when she failed to send precisely what he contemplated. Lowe's painstaking efforts, replete with instances of coercion and control, do not constitute mere solicitation.

Lowe's reliance on the caselaw is inapposite. He cites *King*, where there was no evidence that the defendant shared the images with others despite transferring images from his cell phone to a computer disk. 979 F.3d at 1083 & n.3. *King* is distinguishable on at least two grounds. First, the court declined to address the enhancement's application. *See id.* Second, the adult defendant in *King* "posed minors engaged in sexually explicit conduct and produced sexually explicit images of those minors using his cell phone." *Id.* at 1078. Neither is the case here.

Similarly, Lowe's reliance on out-of-circuit caselaw is mistaken. First, he cites a district court case that is distinguishable from the instant one.[2] Second, Lowe's reliance on a Ninth Circuit case runs counter to his

---

[2] *See United States v. Merrill*, 578 F. Supp. 2d 1144, 1147 (N.D. Iowa 2008) (noting that the "[d]efendant *did not ask* [the child victim] to send him the fifteen photographs") (emphasis added).

position.[3]

Lowe overestimates the ramifications of this holding to the fate of Application Note 1, suggesting that "every time a defendant solicit[s] child pornography, it would be considered distribution." That is inaccurate for at least two reasons. For one, there is not "mere" solicitation in the instant case. And second, courts can appropriately ascertain conduct, as here, that goes beyond "mere" solicitation such that the "mere" solicitation language is not rendered meaningless.

For the reasons above, "[a]s a whole, Section 2G2.1's text and relevant commentary support the district court's application of the enhancement." *See McGavitt*, 28 F.4th at 576. Because the district court did not err in imposing a distribution enhancement, given that Lowe had a sufficient degree of control over the child whom he coerced, we decline to address harmless error.

AFFIRMED.

_____

[3] *See United States v. Hernandez*, 894 F.3d 1104, 1109 (9th Cir. 2018) (indicating that "*none*" of the cases that the defendant cited supported his "*narrow* reading" that a distribution enhancement "applies only if a defendant transmits illicit pornographic materials to a third party") (emphasis added).